**Michael RUFFALO, Jr., et al., Plaintiffs,**

v.

**Benjamin CIVILETTI, et al., Defendants.**

**No. 80–0675–CV–W–6.**

United States District Court,
W.D. Missouri, W.D.

May 26, 1983.

Jack Novik, A.C.L.U., George Kannar, Children's Rights Project, A.C.L.U., New York City, Sanford Krigel, Krigel, Perlstein & Krigel, Kansas City, Mo., for plaintiffs.

Mark Zimmermann, Asst. U.S. Atty., Kansas City, Mo., George E. Kapke, Independence, Mo., for defendants.

MEMORANDUM AND ORDER GRANTING VISITATION AND COMMUNICATION RIGHTS UNDER SECURITY ARRANGEMENTS AND DENYING REQUEST FOR RETURN OF CHILD TO MOTHER'S CUSTODY

SACHS, District Judge.

Before the Court and ready for ruling is plaintiff Donna Ruffalo's claim for injunctive relief, in which she seeks an order requiring her former husband Michael Ruffalo, Sr. (Michael) and the federal defendants to return her son Michael Ruffalo, Jr. (Mike) to her custody in Kansas City.[1] Most of the relevant issues have been previously addressed by this Court, 539 F.Supp. 949 (W.D.Mo.1982), and by the Court of

---

1. In a conference held May 19th to discuss the briefing schedule, Donna's counsel suggested that the issues before the Court might be mooted through a concession by Donna to seek only visitation and communication rights rather

than full custody for a period of six to eighteen months. (Tr. 21–22). Based on testimony at the hearing by Mike that he was afraid to return to Kansas City and "would not stay in Kansas City" if he were brought back (Tr. 251),

Appeals, 702 F.2d 710 (8th Cir.1983), in connection with Donna's motion for partial summary judgment. The case has been remanded to this Court from the Court of Appeals for a prompt hearing and determination of two issues. We understand the Court of Appeals to have held that Donna is entitled to the relief sought, unless it is concluded that (1) Donna is not litigating in good faith, but is motivated in whole or in part by an objective of assisting criminal elements in Kansas City to locate and kill Michael, or (2) unavoidable dangers to Michael or Mike,[2] incident to a return to Donna's custody, should cause the Court to stay its hand or alter the relief granted.

Although this case has been pending for almost three years, counsel for the parties, particularly Donna, engaged in extensive discovery immediately prior to the hearing, which was held on May 6 and 7, 1983. The parties thereafter requested extensions in a briefing schedule, and submitted their post-hearing briefs and proposed decrees on May 25, 1983. At this time, we decide the two issues considered at the hearing. Both will be ruled, in large part, in favor of the defendants. The rulings are based on the peculiar facts of this case and will not, in the Court's opinion, establish a significant precedent barring equitable relief to other parents whose children have been taken into the Witness Protection Program without parental consent, prompt compliance with state law, or other due process.

## GOOD FAITH

Consideration of the issue of Donna's good faith in bringing this action may be likened to consideration of an "unclean hands" defense as a bar to equitable relief. Such a defense is generally not favored; it avoids the merits of the controversy and may be subject to abuse. The Court is persuaded, however, that the unclean hands defense bars the complete equitable relief sought in this case.

The most significant evidence on this question was the testimony of defendants' witness Bobby Gene Jones. Jones, a protected witness formerly active in the Kansas City organized crime community, testified that on four occasions during the course of this litigation he transmitted money to Donna, totalling perhaps $1,100, from underworld figures who were attempting to use the litigation or a result favorable to Donna to lure Michael into danger. The payments were said by Jones to be initiated by a person described as the current "boss" of the "Kansas City Mafia" or La Cosa Nostra (LCN),[3] who was also quoted in testimony by Michael as informing him that "you can't get away from us ... you have got that kid of yours." (Tr. 267). The Jones testimony came in with considerable detail, and little cross-examination. It must be considered controlling if credible.

Donna flatly denied the payments. (Tr. 363). Her testimony was impeached in several respects and was generally less credible in tone and manner than that of Jones. It is concluded that, more probably than not, Donna has been receiving payments to encourage her to litigate. If so, there can be little doubt that she knows that her actions are being rewarded because they may bring

Donna's counsel expressed concern that if Mike were returned and Michael relocated, prior to Mike's reestablishing a relationship with Donna through visitation and communication, Mike would run away and be lost to both parents. Donna's brief proposes, however, that the Court decide what relief Donna is entitled to prior to any attempt by the parties to agree on visitation and communication. The issues before the Court have, therefore, not been mooted by the suggestions at the May 19th conference. In any event, the fact that Donna would have reserved her claim for complete equitable relief would have precluded a finding of mootness.

2. Danger to Michael as a result of Mike's return to Donna's custody is not regarded as a serious problem. Michael would presumably be relocated in conjunction with Mike's return, so that Mike would be unable to reveal his father's new identity or location. 702 F.2d at 719.

3. The Court refrains from naming all pertinent names in this memorandum. This litigation is being widely publicized, and publicity could have an adverse effect on a jury impanelled in a pending criminal prosecution. Counsel will have no difficulty in supplying specific names in any appeal from this decision.

about the death of her former husband (Tr. 69–70, 75, 93, 98–99). If any other reason for the payments could be supposed, it has not been presented by Donna.

In addition to the Jones testimony, defendants presented evidence showing less than normal maternal behavior by Donna in the past. It is unnecessary to detail this evidence, which relates primarily to Donna's daughter, Angela, but also related to Mike. The primary thrust of the evidence was that with Donna's permission or on her initiative, her children have lived with other individuals, and not with her, for much of their lives.

The evidence as to Donna's relationship with her children in the past raises some skepticism regarding her motives in seeking the return of Mike. This is the first time in a number of years that Donna has indicated a desire to have responsibility for one of her children full-time. Still, we are persuaded that she does have significant maternal feelings toward Mike and does have a genuine desire to have him returned. Even Michael conceded that Donna loves Mike and wants him back, at least temporarily.

■ The Court is unaware, however, that any court of equity has granted or has been tempted to grant full equitable relief when the litigation is tainted, as in this case, by the acceptance of even minor funding from persons with a murderous intent known to plaintiff. This litigation is being subsidized as the vehicle of intended homicide.* While the compensation is small, the federal defendants have shown that Donna has an implied understanding with individuals intending harm to Michael. Nonetheless, while there is no known precedent for this bizarre situation, it is the Court's view that even a wicked mother has some rights that should be respected. While full equitable relief would be rejected because of unclean hands, alone, Donna's claim to visitation and communication rights will be granted.

## DANGER

■ As the Court of Appeals has noted, "the constitutional rights involved here are not absolute, in the sense that they must prevail at all times and in all places against every competing consideration." 702 F.2d at 718–19. A major competing consideration to be examined is whether granting the injunctive relief sought by Donna would result in an excessive risk of danger to Mike. See *Drollinger v. Milligan*, 552 F.2d 1220, 1227 (7th Cir.1977). The federal defendants attempted, unsuccessfully, to establish that the families of informants, if left unprotected, are generally in grave danger of retaliation.[4] Danger to children appears to be the rare exception and not the rule.[5] However, past violence against innocent women and children in Kansas City from LCN sources seems probably to have occurred occasionally and is accepted by law enforcement officers having expertise and responsibility. In this case, a specific threat against Mike from the reputed LCN "boss" has been testified to convincingly by Michael (Tr. 267). An additional threat, even more pointed, to "stick (Mike) in a well" should Michael "go wrong" was voiced by Arthur Eugene Shepherd, an individual subsequently imprisoned as a result of Michael's testimony. (Tr. 264–65).

Danger is a matter of degree, dependent upon particular circumstances. In this case, as an independent ground for the result here reached, it is the Court's conclusion that sufficient danger has been shown to warrant keeping Mike away from Kansas City and denying Donna's request for his

---

* The Court implies no criticism of the sponsoring organization, the American Civil Liberties Union Foundation, Children's Rights Project. The reference is to subsidies offered by others and received by plaintiff, Donna Ruffalo.

4. The United States Court of Appeals for the District of Columbia, in a recent opinion in a case presenting similar issues to the instant action, noted differing views among scholars regarding the degree of danger of retaliation against informants themselves. *Franz v. United States*, 707 F.2d 582, 605 (D.C.Cir.1983).

5. Even in this case, former FBI agent Leone Flosi attempted to discourage Michael from taking Mike with him into the Witness Protection Program, although Flosi appeared to be concerned more with the greater difficulty in relocating both father and son than with whether there was danger to Mike in being left behind. (Tr. 227–28).

return.[6] The defendants' theory of violence or gross harassment of Mike supposes using him for simple retaliation or as "bait" to attract Michael back to Kansas City. An unusually close relationship between father and son has been established. The relationship has been the source of threats from local organized crime figures. Publicity surrounding this very litigation could serve to make Mike an object of danger, if he were returned to Kansas City. Violence would convey a dramatic message not only to Michael but also to other would-be informants. While, on balance, it may nevertheless be deemed somewhat unlikely that Mike would suffer grievously if returned, the Court does not feel obligated to subject him to a serious risk. The opinion of the Court of Appeals does not dictate that such a risk be run. On the contrary, we have been instructed to be mindful "of the strong interest in protecting Michael's and Mike's lives and physical safety." 702 F.2d at 719.

Donna has herself made some protective gestures. She testified rather unconvincingly that she would be willing to leave town and change her name, but not go into the Witness Protection Program. From what the Court has heard, trusting Donna to be able to find a secure home for Mike is not feasible.

### RELIEF

The above findings persuade the Court that the complete injunctive relief sought by Donna, i.e., the return of Mike, is not warranted. These findings do not preclude all relief, however. Donna does possess a sincere desire to have contact with her son. With respect to the issue of danger, defendants have represented that communication and visitation between Donna and Mike could be arranged without significant danger, certainly with less danger than would be occasioned by a return of Mike to Kansas City.[7]

It is therefore ORDERED that

(1) plaintiff Donna Ruffalo's prayer for injunctive relief requiring return of Michael Ruffalo, Jr., to her custody in Kansas City is denied.

(2) defendants will be required, at defendants' expense, to supply plaintiff with reasonable visitation and communication rights, under appropriate security arrangements.

(3) the parties shall promptly confer and attempt to reconcile their three drafts of terms of a decree granting plaintiff visitation and communication rights, as submitted to the Court on May 25, 1983.

(4) any agreed form of decree granting visitation and communication rights shall be submitted to the Court on or before June 6, 1983. If the parties are unable to agree, they shall file suggestions supporting their individual proposals and opposing the proposals of others on or before June 10, 1983.

SO ORDERED.

---

6. For purposes of appellate review and possible precedential effect, I would quantify the risk of serious harm at perhaps 10%. In the ordinary case, the risk to families is probably less than 1%.

7. Similar representations have been made in the Franz case. 707 F.2d at 590.