**William FRANZ, et al., Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

Civ. A. Nos. 81–173, 84–304.

United States District Court, District of Columbia.

July 6, 1984.

Jack Lipson, Bruce P. Garren, Arnold & Porter, Washington, D.C., for plaintiffs.

William H. Briggs, Jr., Asst. U.S. Atty., Washington, D.C., James Bennett, Associate Gen. Counsel, United States Marshal's Service, McLean, Va., for defendants.

Larry S. Gondelman, Hundley & Cacheris, P.C., Washington, D.C., for intervenor Catherine Allen.

Lawrence Speiser, Washington, D.C., Guardian ad Litem.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

### INTRODUCTION

This litigation presents problems arising from the operation of the Witness Protection Program ("Program").[1] Specifically, it involves the efforts of a parent, William Franz, to exercise visitation rights with his three minor children of a prior marriage to Catherine Mary Franz. The three children, along with their mother, became participants in the Program. Thereafter, the United States Marshals Service relocated the children and their mother, together with her new husband, a Program participant.

### BACKGROUND

William Franz married Catherine Mary Franz in 1966. Three children were born of the marriage: William Michael Franz, Christine Catherine Franz and Donna Marie Franz. Several years after the marriage, William and Catherine separated, and in 1974, the Court of Common Pleas, Philadelphia, Pennsylvania, awarded Catherine custody of the minor children, with visitation rights reserved to William. On July 9, 1976, a final divorce decree was entered by the Court of Common Pleas of Bucks County, Pennsylvania. The custody and visitation rights previously granted to Catherine were incorporated in the divorce decree.

After her divorce, Catherine Mary Franz married Charles Allen, a participant in the Witness Protection Program. Allen had previously cooperated with and testified for the government in various criminal prosecutions. In early 1979, in furtherance of the agreement between Charles Allen and the government, Catherine Mary Franz Allen and the three minor children entered

1. The Witness Protection Program originated under the Organized Crime Control Act of 1970, §§ 501–504, Pub.L. 91–452. One of its purposes is to guarantee the safety of witnesses who under arrangement with the federal government agree to serve as witnesses against persons who are targets and participants in organized criminal activity. This guarantee purportedly serves as an incentive for persons to become government informants, thus allowing prosecution where otherwise it would be difficult.

the Program. Thereafter, the mother and the three children were given new identities and relocated elsewhere with Charles Allen. Mr. Franz had no prior notice of this action and was not advised of or consulted about his children's participation by anyone.

In January, 1981 William Franz filed his first complaint, C.A. 81–173, on behalf of himself and as parent and natural guardian of his children, seeking injunctive and declaratory relief and damages for the unlawful deprivation of rights guaranteed by the Constitution and federal statutes, including the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.*[2] Named as defendants were the United States of America, the United States Department of Justice, the United States Marshals Service and four officials, Benjamin Civiletti, former Attorney General, and William E. Hall, former Director of the Marshals Service, William French Smith, present Attorney General, and Stanley E. Morris, present Director of the Marshals Service.[3] The four officials were sued in both their individual and official capacities. However, the complaint against these officials in their individual capacities was subsequently dismissed with prejudice by stipulation after they filed affidavits stating that they did not participate, personally or otherwise, in the decision to place the Franz children in the Program or to deny Mr. Franz any visitation rights. Later, in early 1984, Mr. Franz filed a second complaint, C.A. 84–304, which paralleled and tracked the first, but named additional government officials as defendants.

The first complaint was dismissed for failure to state a claim, *Franz v. United States*, 526 F.Supp. 126 (D.D.C.1981), relying principally upon a Second Circuit opinion, *Leonhard v. United States*, 633 F.2d 599 (2d Cir.1980), *cert. denied*, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981). On appeal, our Circuit Court reversed the dismissal and remanded the proceeding for further consideration. *Franz v. United States*, 707 F.2d 582 (1983) addendum by 712 F.2d 1428.

In the second complaint, C.A. No. 84–304, Mr. Franz, on behalf of himself and his minor children, has sued the United States of America and two government agencies— the Department of Justice and the Marshals Service. Two government officials were added as defendants: Gerald Shur, an official of the Criminal Division, Department of Justice, and Howard Safir, an official of the Marshals Service. Shur and Safir are sued in their individual and official capacities. Punitive and compensatory damages are sought against them. The causes of action asserted are grounded in constitutional claims and common law claims under the Federal Tort Claims Act. The factual assertions of the complaint and the relief sought are essentially those set out in the original 1981 complaint.

## PENDING MOTIONS

The government has moved to transfer the first complaint to the Eastern District of Pennsylvania, where the Franz divorce decree was entered and the children were admitted into the Witness Protection Program, or alternatively, to the Eastern District of Virginia, where the Marshals Service is headquartered. This motion focuses on venue problems as they relate to the plaintiff's claims for injunctive and declaratory relief and for relief under the Federal Tort Claims Act. The parties were allowed full discovery for the purpose of ascertaining facts relevant to the venue issue.

In the second complaint, the government has moved to dismiss, or, in the alternative,

---

**2.** Although the amended complaint is filed by Mr. Franz on behalf of himself and his children, an issue exists as to the proper alignment of the children as parties in this litigation. A guardian *ad litem* for the three minor children was appointed by the Court on December 21, 1983 for the purpose of clarifying this issue, as well as other issues in this litigation.

**3.** Defendants Smith and Morris were added as defendants in subsequent amendments to the complaint. Charles Allen was also an originally-named defendant. During the course of this litigation, Catherine Allen was allowed to intervene as a defendant.

seeks summary judgment, as to the claims against the individually-sued federal officials, Shur and Safir. The government also moves to dismiss the remaining claims against the federal government because they are identical to the claims asserted by Mr. Franz in the earlier complaint.

For the reasons set out below, the Court determines that venue is proper in the District of Columbia and denies the motion to transfer in C.A. No. 81–173. The claims for damages asserted against Mr. Safir and Mr. Shur are dismissed. Because the remaining causes of action asserted in C.A. No. 84–304 are identical to those charged in the earlier complaint, C.A. No. 84–304 is dismissed in its entirety.

## LEGAL ANALYSIS

### A.

### Appropriateness of Venue in the District of Columbia

#### 1.

#### Introduction

The parties agree that venue for plaintiff's claims is based on three distinct federal statutes. For the equitable claims, venue is conferred by 28 U.S.C. § 1391(e)(1), and venue for the damages claims against the individual federal defendants is conferred by 28 U.S.C. § 1391(b). Venue for the cause of action under the Federal Tort Claims Act is governed by 28 U.S.C. § 1402(b). Since the issue of venue for the individual damages claims is mooted by this Court's disposition of those claims on the merits, discussed *infra* at 380, the appropriateness of venue for the equitable claims and the federal tort claims is next considered.

■ Only the question of venue under the FTCA, however, requires a detailed analysis. The government raises no serious objections as to venue concerning the plaintiff's equitable claims. As the government concedes, 28 U.S.C. § 1391(e)(1) determines venue for "a civil action in which a defendant is an officer or employee of the United States or any agency thereof acting

in his official capacity..., or an agency of the United States, or the United States," and it provides for venue "in any judicial district in which: (1) a defendant in the action resides...." The residence of an official defendant is determined on the basis of the official residence of the federal officer or agency. *Lamont v. Haig,* 590 F.2d 1124, 1128 n. 19 (D.C.Cir.1978).

■ In this proceeding, three official defendants, the United States, the Department of Justice, and the Attorney General reside in the District of Columbia. Their residence as a source of venue in this District is not precluded by the government's assertion that the Department of Justice is only a nominal defendant in this action. That argument ignores the technical requirements of section 1391(e)(1) and glosses over the Department's responsibility for administering the Witness Protection Program. *See* discussion *infra* at 378–379. Under these circumstances, the plaintiff has shown that venue lies in this district for his equitable claims against the federal government.

#### 2.

### Venue Under the Federal Tort Claims Act

Venue for plaintiff's claim under the FTCA is conferred by 28 U.S.C. § 1402(b), which provides for venue "only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." The federal defendants contend that venue is inappropriate in this district because the plaintiff resides in Pennsylvania, and the activities which are the subject of this litigation took place in that state and the State of Virginia, where the Marshals Service is located. The government's assertion that venue lies in a Virginia federal court is premised on the belief that the Marshals Service, not the Justice Department, bears responsibility for any harm which the plaintiff has suffered. While it is undisputed that the plaintiff resides in Pennsylvania and venue is undoubtedly proper in *either* a Virginia or Pennsylvania

federal district court, only an extremely narrow interpretation of section 1402(b) would preclude venue in the District of Columbia. The Court rejects such a narrow interpretation, and finds that venue lies in this judicial district for the plaintiff's federal tort claims.

■ Under the prevailing interpretation of section 1402(b), venue is proper in the District of Columbia if sufficient activities giving rise to the plaintiff's cause of action took place here. These venue requirements have been interpreted in accordance with the venue requirements of section 1391(b), *Thornwell v. United States*, 471 F.Supp. 344, 356–57 (D.D.C.1979), and the relevant terms of the two statutes are similar. Where section 1402(b) refers to the district "[where] the act or omission occurred," section 1391(b) refers to "the judicial district ... in which the claim arose." The language of section 1391(b) has been liberally construed to allow venue "in a district where a *substantial portion* of the acts or omissions giving rise to the [court] actions occurred, notwithstanding that venue might also lie in other districts." *Lamont v. Haig*, 590 F.2d at 1134 (emphasis added). In other words, the plaintiff's choice of a forum is honored "if the activities that transpired in the forum district were not insubstantial in relation to the totality of events giving rise to plaintiff's grievance." *Id.* at 1134 n. 62.

■ In applying that test to the facts of this case, it is readily apparent that the role of the Department of Justice in the sum total of events which resulted in this lawsuit was not insubstantial. For example, the Department and the Attorney General retained overall responsibility for the administration of the Program's witness protection and maintenance policies. OBD 2110.2 (Jan. 10, 1979), Ex. A; DOJ Order 2110.42 (July 19, 1983), Ex. B.[4] A portion of this authority was exercised by the Department's Office of Enforcement Operations, *see e.g.*, Ex. B at 10(c)(3), while other

functions were delegated to the Marshals Service. *See generally* Exs. A, B; 28 C.F.R. 0.111(c). The decision to place the Franz children in the Program was made exclusively by Justice Department officials in Washington, D.C., Affidavit of Howard Safir at ¶ 3(a), filed November 23, 1983, and at approximately that time these officials were also aware that Mr. Allen was not the father of Catherine Allen's children. Deposition of Gerald Shur ("Shur Dep.") at 88–89, 94–96, filed May 23, 1984; Memorandum and Attachments from Safir to Shur Re Allen's Preliminary Interview (Feb. 13, 1979), Ex. C.

Even if the Department had taken no further affirmative steps with respect to the Franz children, the decision to accept the children into the Program would have effectively prevented the plaintiff from seeing his children. Without knowledge of the new identities and new residences of his children and his former wife, the plaintiff would have been unable to seek enforcement of the visitation rights provided by the Pennsylvania court or to obtain jurisdiction over his former wife and the children in any judicial proceeding. In short, the entry of the children into the Program assisted Catherine Allen in her decision to refuse visits between the children and their father.

The Department's relationship with the Franz children, however, did not cease once the children were admitted into the Program. Indeed, the facts point to the Department's involvement in Mr. Franz' attempt to enforce his visitation rights before the Pennsylvania court. Handwritten Notes of Unidentified Employee of the Philadelphia Strike Force, dated August 1, 1979, Ex. F; Response of Philadelphia Strike Force on Organized Crime and Racketeering to Plaintiff's Second Set of Interrogatories, filed April 3, 1984. Furthermore, in 1980, officials at Justice received communications from other federal government sources concerning Franz' request to

---

**4.** The exhibits referred to in this opinion are attached to Plaintiff's Combined Memorandum in Opposition to (1) Motion of Official Federal Defendants to Transfer in No. 81–173 and (2) Motion to Dismiss, or, in the Alternative, for Summary Judgment, in No. 84–304.

visit his children. Shur Dep. at 154–56, Deposition of Howard Safir ("Safir Dep.") at 126, filed May 23, 1984; Handwritten Notes of Gerald Shur, dated June 27, 1980, Ex. J; FBI Memorandum, dated Sept. 8, 1980, Ex. O. Even if the decision to deny Mr. Franz' visitation request was not dictated by officials at the Justice Department in Washington, D.C., Letter from Safir to Salvatore R. Martoche, former attorney of Mr. Franz, dated Oct. 6, 1980, Ex. W, the Department was more than peripherally involved in the course of events leading up to this litigation. Under these circumstances, transfer to a different jurisdiction is unwarranted.

The conclusion that venue lies in the District is also buttressed by this Court's "assesment of [the] ramifications [of these operative events] for efficient conduct of the suit." *Lamont v. Haig*, 590 F.2d at 1135.[5] The parties have already engaged in extensive discovery in this proceeding, and the Court is familiar with this case after more than three years of litigation. Much of the documentary evidence is located in this District, and many of the government's potential witnesses either reside or work in this area. Neither Mr. Safir nor other Marshals Service personnel will be unduly inconvenienced by a trip from McLean, Virginia, the headquarters office of the Service, to the District of Columbia. The District of Columbia is also the home of several government entities involved in the Witness Protection Program, and the location of counsel for the parties.

These factors counseling against transfer are not outweighed by the suggestion that this Court may wish to ask the Pennsylvania court to clarify the visitation arrangements among the various interested parties. In view of the fact that such a remand is only a possibility at this point, transfer to Pennsylvania is not warranted. Accordingly, this lawsuit should remain in this district court.

### B.

### Damages Claims Against the Individual Federal Defendants

■ The plaintiff's action for damages against Safir (Justice) and Shur (Marshals Service) runs squarely against the qualified immunity doctrine. Under that doctrine, a federal official acting within the scope of his duty and performing discretionary functions is "shielded from liability for civil damages" if he can make the objective showing that his

> conduct [did] not violate *clearly established* statutory or constitutional rights *of which a reasonable person would have known.*

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (emphasis added). One year later, our Circuit Court in *Zweibon v. Mitchell*, 720 F.2d 162, 168 (D.C.Cir.1983) followed *Harlow* in holding that if "the law was not clearly established at the time the contested conduct occurred, the inquiry ceases," and the official is entitled to summary judgment. *See Hobson v. Wilson*, 737 F.2d 1 at 25, 26 (D.C.Cir.1984); *Davis v. Scherer*, —— U.S. ——, ——, 104 S.Ct. 3012, 3018, 82 L.Ed.2d 139 (1984) (action against state officials under 42 U.S.C. § 1983).

In the face of this principle, the plaintiff cannot successfully contend that the defendants have violated any clearly established rights of Mr. Franz.[6] Instead, he

---

**5.** These factors also suggest that the case should not be transferred to the Eastern District of Pennsylvania or the Eastern District of Virginia. 28 U.S.C. § 1404(a) provides for transfer to an alternative jurisdiction in which venue is also appropriate where the "convenience of parties and witnesses" and "the interest of justice" would be served by transfer to a different jurisdiction.

**6.** This concession is essentially mandated by the state of the law at the time the government

rejected the visitation request, *see Leonhard v. Mitchell*, 473 F.2d 709, 713–14 (2d Cir.), *cert. denied*, 412 U.S. 949, 93 S.Ct. 3011, 37 L.Ed.2d 1002 (1973), the initial decision of this Court dismissing the plaintiff's complaint, 526 F.Supp. at 129, and statements in the Court of Appeals' decision. 707 F.2d at 595, 602 (majority opinion); 712 F.2d 1428, 1444 (1983) (J. Bork, concurring and dissenting). *See also Ruffalo v. Civiletti*, No. 80–0675–CV–W–6 (W.D.Mo. May 25, 1984).

argues that the defendants' actions fall outside the reach of the deferential *Harlow* test because they exceeded the scope of their permissible authority. This contention follows from Franz' suggestion that the government's decision to deny his visitation request was based on Catherine Allen's refusal to authorize visits, and his belief that only an explicit concern for the security of the Allens or the Franz children would constitute a permissible justification for the government's actions. The plaintiff also points to the general policy of the Marshals Service permitting visits. *See* Letter from William Hall to Subcommittee on Administrative Practice and Procedure, Senate Judiciary Committee (dated May 19, 1980), attached to *Submission for the Record of Newly-Discovered Evidence and Reply to Notice of Recent Decision,* filed June 14, 1984. The plaintiff's view of the applicable law is misplaced, and accordingly, his claim for damages against the individual federal defendants must be dismissed.

■ The scope of authority of a federal official has been broadly defined to include any action which is "within the outer perimeter" of his responsibilities, *Barr v. Matteo,* 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959). Stated differently, a federal defendant may invoke the qualified immunity defense if his decision was not "manifestly or palpably beyond his authority ... having more or less connection with the general matters committed by law to his control or supervision." *Briggs v. Goodwin,* 569 F.2d 10, 16 (D.C.Cir.1977) (qualified immunity extends to prosecutor alleged to have committed perjury), *cert. denied,* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978) (quoting *Spalding v. Vilas,* 161 U.S. 483, 498, 16 S.Ct. 631, 637, 40 L.Ed. 780 (1896)).

The practical application of this broad definition of a federal official's responsibilities is subject to two formulations. The first would only consider the nature of the defendant's actions, and would preclude any examination of the reasons for the action taken. This analysis follows from the purpose of the immunity defense, which is to protect government officials and the public from the "substantial costs of litigation [including] the distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Harlow v. Fitzgerald,* 457 U.S. at 816, 102 S.Ct. at 2738. Under this formulation, any activities concerning the administration of the Program would qualify as protected activities, and defendants could invoke the qualified immunity doctrine.

■ Although the above analysis is attractive, the Court declines to apply it because the defendants are entitled to assert their qualified immunity from suit on a narrower ground, namely, that the government's decision to deny visitation for the reasons asserted by the plaintiff was a discretionary, job-related decision. The Attorney General has the authority to provide for the security of Government witnesses and their families pursuant to the Organized Crime Control Act of 1970, §§ 501–04, and some portion of this responsibility has been delegated to the Marshals Service. *See, e.g.,* OBD 2110.2, Ex. A; DOJ 2110.42, Ex. B. These functions broadly encompass the "provision for the health, safety, and welfare of Government Witnesses and their families." 28 C.F.R. § 0.111(c), and fall within the broad band of duties characterized as discretionary. *See Davis v. Scherer,* —— U.S. at —— n. 14, 104 S.Ct. at 3021 n. 14.

As the Court of Appeals recognized, the administration of the Witness Protection Program puts federal officials in the unenviable position of balancing the interests of multiple conflicting interests. *Franz v. United States,* 707 F.2d at 610. This responsibility requires numerous discretionary decisions which affect many aspects of the lives of the individuals under the protective umbrella of the Program. For instance, the government provides these individuals with new identities and locations, as well as financial, employment and counseling services. Given the broad range of the

duties involved in the administration of the Program, a decision to refuse visitation on the basis of the custodial parent's wishes, or the wishes of the children, is within a federal official's scope of authority.

Moreover, Safir and Shur are entitled to qualified immunity despite the asserted policy allowing visitation by noncustodial parents. Under *Davis v. Scherer,* ⎯⎯ U.S. at ⎯⎯ n. 12, 104 S.Ct. at 3020 n. 12, even an official's failure to comply with an applicable state regulation does not eviscerate the qualified immunity defense unless the regulation is the source of the plaintiff's cause of action.[7] While the government's decision might not have been desirable from a policy perspective, the motivation for that decision is not sufficient to defeat the qualified immunity defense asserted by the defendants.

## CONCLUSION

The government's motion to transfer C.A. 81–173 is denied. In addition, the government's motion for summary judgment with respect to the damages claims against the individual federal defendants in C.A. 84–304 is granted, and the complaint is dismissed with prejudice. With respect to future proceedings, the parties should heed the Court of Appeals' admonition that:

> ultimate resolution of this controversy by a court may not be the ideal solution for any of the parties.... [T]he parties are likely to be better able than a judge to work out an arrangement for reconciling—or at least compromising between—their various needs and desires.

*Franz v. United States,* 707 F.2d at 610. With this purpose in mind, a status conference will be scheduled to discuss the future course of this litigation.

---

7. *McSurely v. McClellan,* 697 F.2d 309 (D.C.Cir. 1982) (per curiam), cited by the plaintiff, is inapposite for two reasons. First, the Court of Appeals' reliance on the allegation that the state prosecutor's actions were beyond the scope of his authority, *id.,* at 313, 326, appears to relate to the question of whether a reasonable person

should have known that his actions were illegal, *not* to the threshold inquiry concerning the scope of his duties. Second, the numerous allegations in *McSurely* concerning the state prosecutor's flagrantly illegal conduct far exceeded the activities alleged to have occurred in this case.