**Anthony J. PRISCO, Jr., Appellant,**

v.

**Dennis P. TALTY, Individually t/a Zeitz and Talty; Glenn A. Zeitz, Esq., Individually t/a Zeitz and Talty.**

No. 92–1707.

United States Court of Appeals, Third Circuit.

Argued Feb. 22, 1993.

Decided April 30, 1993.

Richard J. Silverberg (Argued), Richard J. Silverberg & Associates, Philadelphia, PA, for appellant.

Richard L. Scheff (Argued), Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for appellees.

Before: SLOVITER, Chief Judge, BECKER and MANSMANN, Circuit Judges.

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

This appeal arises from the dismissal of a legal malpractice action brought by a client who alleged that the negligence of his attorneys caused him to lose a lawsuit he had filed against the United States. In that separate action, Anthony Prisco had alleged that his young daughter Lauren was admitted into the Federal Witness Protection Program and her identity changed without notice to him in violation of his state visitation and custody rights.[1] Because Prisco had not filed the prerequisite administrative claim, his Federal Tort Claims Act case was dismissed. Prisco sued his attorneys, alleging that the failure to file the claim was legal malpractice.

Ruling on a motion to dismiss, the district court held that Prisco would not have recovered on his legal malpractice action in any event because, applying the sovereign immunity provision of the Witness Security Reform Act of 1984 retroactively, the United States would have been entitled to sovereign immunity in the original suit. We must decide whether the district court erred in applying the sovereign immunity amendment, which became effective one year after Prisco's cause of action accrued.

Based on well-established standards of statutory construction, we hold that, with one clearly stated exception, the 1984 amendments do not apply to a cause of action which had accrued prior to the effective date of their enactment. Thus, the district court erred in applying the sovereign immunity provision to bar Prisco's claim of legal malpractice. We will thus vacate the order of the district court dismissing Prisco's malpractice suit and will remand to the district court for reinstatement of Prisco's complaint.

### I.

We have previously discussed at length the facts underlying Anthony Prisco's dispute

---

1. *Prisco, et al. v. United States of America,* Civil Action No. 85–6739 (E.D.Pa.1985).

with the United States Marshals Service.[2] A brief recitation would be helpful here.

After the sudden and unexplained disappearance of his former wife and their daughter Lauren, Anthony Prisco retained Dennis P. Talty, Esquire, to locate Lauren, with whom Prisco had an ongoing parental relationship despite the fact that Lauren resided with her mother.[3] Talty's investigation led to the discovery on December 5, 1983, that Lauren had been placed in the Witness Protection Program in September or October of 1983.[4]

Talty then filed, on behalf of Prisco, a petition to suspend child support, a request for an order for contempt of visitation and for custody of Lauren. At hearings held in the Court of Common Pleas of Philadelphia County, Family Court Division, representatives of the U.S. Marshals Service testified that they had performed a detailed threat assessment before concluding that it was in Lauren's best interest to be admitted into the program.[5] Nonetheless, the government agreed to facilitate, and pay the expenses of, monthly visitation between Prisco and Lauren at a "neutral" site and under constant U.S. Marshal supervision.[6] Approximately three and one-half months had elapsed between the time Prisco had become aware of his daughter's absence and the time of the hearings.

Talty proceeded to file a complaint pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), 2671 et seq.,[7] on behalf of Prisco against the United States seeking injunctive and declaratory relief and money damages for interference with his state law rights.[8] In dismissing the complaint, the district court held that Prisco had failed to comply with the jurisdictional requirements of the FTCA by not filing an administrative claim with the relevant federal agency within the two year period required by the statute

---

2. *Prisco v. United States Dept. of Justice,* 851 F.2d 93 (3d Cir.1988), *cert. denied,* 490 U.S. 1089, 109 S.Ct. 2428, 104 L.Ed.2d 985 (1989).

3. Upon Prisco's divorce from Lauren's mother, Maria, in March of 1983, he entered into an agreement giving Maria custody. Prisco retained visitation rights with child support obligations.

4. Lauren entered the program with her mother and her mother's new husband, who was cooperating with the government in the investigation of a criminal conspiracy.

5. Prisco denies that this hearing in connection with his petition constituted procedural due process affording him a meaningful opportunity to protest Lauren's admission into the Witness Protection Program. Some federal courts have held that "post-deprivation" hearings satisfy due process in the context of the Witness Protection Program in those instances where pre-entrance hearings would have been impossible or would have seriously compromised the government's ability to protect the witness. In such cases, however, a post-deprivation hearing is required to be held as soon as is practicable after admission of the witness into the Program. *See Franz v. United States,* 707 F.2d 582, 609 (D.C.Cir. 1983), *supp. op.* 712 F.2d 1428 (D.C.Cir.1983); *Ruffalo v. Civiletti,* 702 F.2d 710, 715 (8th Cir. 1983), *on remand,* 565 F.Supp. 34 (W.D.Mo. 1983), *later proceeding sub nom., Ruffalo v. United States,* 590 F.Supp. 706 (W.D.Mo.1984). We further note that 18 U.S.C. § 3524(c) obliges the Attorney General to notify the non-relocated parent of the child's program participation only after the child is relocated.

6. Prisco apparently visited Lauren twice in 1984 under these conditions, but discontinued visits, asserting that the abnormal conditions harmed Lauren and their father/daughter relationship. Prisco continued to seek custody of Lauren and in June of 1987, he was granted custody. The delay in this grant was caused by the death of the judge handling the case and the subsequent reassignment of the matter. The custody order was later vacated and in October of 1987, after Maria and Lauren left the program, Maria and Prisco entered into a joint custody agreement.

7. Talty also brought a constitutional due process claim for damages against several government officials under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which the district court dismissed for failure to adduce specific evidence that any named individual federal agent had violated Prisco's constitutional rights. Prisco appealed this dismissal, along with the dismissal of his FTCA claim, which we affirmed without opinion. *Prisco v. United States,* 932 F.2d 960 (3d Cir.1991) (table). Prisco abandoned his *Bivens* claim at oral argument in this current appeal.

8. Under the FTCA the government or its agents are liable for injury they cause by their "negligent or wrongful act or omission" if similar liability would attach to a private person under state law. 28 U.S.C. § 1346(b).

of limitations. 28 U.S.C. § 2401(b) (1988).[9]

Following this dismissal, on November 20, 1991, Prisco filed a malpractice complaint against Talty and his partner, Glenn Zeitz, individually and as the partnership of Zeitz and Talty. Prisco sought compensatory and punitive damages for breach of contract and negligence constituting legal malpractice on the ground that Talty failed to file a timely administrative claim on his behalf, which would have been within two years after the date upon which he and counsel first learned that Lauren had been admitted into the Witness Protection Program.

The district court dismissed Prisco's case pursuant to Fed.R.Civ.P. 12(b)(6) in a Memorandum and Order dated June 23, 1992, holding that even if Prisco's counsel was negligent, Prisco's FTCA claim was barred by retrospective application of the sovereign immunity provision of the Witness Security Reform Act of 1984, a matter the court found to be supported by clear congressional intent. In response to Prisco's motion to reconsider, the court reaffirmed its prior decision, stressing that "it was an act of Congress, not his attorney's act or omission, which scuttled [Prisco's] claim for damages." Order dated July 27, 1992. Prisco appeals from this final order.

■ Although several issues are presented, we will consider only whether the Witness Security Reform Act of 1984's sovereign immunity provision should have been applied retroactively to Prisco's cause of action against the government. Given that the district court did not reach the substantive merits of the issues raised, we will not here decide those issues, but will confine our review to the narrow question of retroactivity in the context of the sovereign immunity amendment. Since this involves a legal question, our standard of review is plenary. *Sames v. Gable*, 732 F.2d 49, 51 (3d Cir. 1984); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

## II.

The Witness Protection Program was established pursuant to Title V of the Organized Crime Control Act of 1970, Pub.L. No. 91–452, §§ 501–04, 84 Stat. 922, 933–34, codified at the note preceding 18 U.S.C. § 3481. As part of the Comprehensive Crime Control Act of 1984, Congress reenacted an expanded version of the statute as the Witness Security Reform Act of 1984, 18 U.S.C. §§ 3521–3528, adding the following sovereign immunity provision:

> The United States and its officers and employees shall not be subject to any civil liability on account of any decision to provide or not to provide protection under [the Witness Protection Program].

18 U.S.C. § 3521(a)(3). The government alleges that this provision immunizes the federal government and its officers from the kind of damage claims asserted by Prisco in his FTCA suit. We hold, however, that it does not have any application to FTCA claims brought in the context of the administration of the Witness Protection Program which had accrued at the time of its enactment.

## A.

■ We note that the first maxim of statutory interpretation is that a statute's facial language is conclusive.[10] *Consumer*

---

9. The district court also dismissed Prisco's claim for injunctive relief as moot because Lauren was released from the Witness Protection Program in 1987.

10. The general presumption against retroactivity for legislative acts, in the absence of clear statutory language or congressional intent to the contrary, has been called into question by two Supreme Court cases which appear to depart from the weight of judicial precedent. *See Thorpe v. Housing Authority of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), and *Bradley v. School Bd.*, 416 U.S. 696, 94 S.Ct. 2006, 40

L.Ed.2d 476 (1974). These cases have generated considerable controversy in the federal courts. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 840–58, 110 S.Ct. 1570, 1478–1588, 108 L.Ed.2d 842 (1990) (Scalia, J. concurring) (discussing recent confusion regarding retroactivity as a general principle of statutory interpretation). Nevertheless, it does remain settled that "where the congressional intent is clear, it governs." 494 U.S. at 837, 110 S.Ct. at 1577 (Opinion of the Court). Here, because we believe that general principles of statutory interpretation and other evidence of clear congres-

*Product Safety Com. v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). We do not find an express general retroactivity provision in the Act, nor is there one attached to § 3521(a)(3). Congress merely provided that the enactment was to take effect on October 1, 1984, Pub.L. 98–473 § 1210.[11]

In addition, Congress explicitly provided for limited retroactivity in another section of the Act, raising the inference that where Congress did not explicitly provide, it did not intend retroactivity. In enacting the Victims Compensation Fund, 18 U.S.C. § 3525, an amendment which also became effective as part of the Act on October 1, 1984, Congress set forth a qualified retroactivity clause which specifically extends the reach of its provisions to "crime occurring before the date of the enactment of this chapter," 18 U.S.C. § 3525(d). The House Report reflects the Committee's understanding that retroactive application of any of the Act's provisions is an exception necessitating explicit justification. The House Report states, with regard to the victims compensation provision:

> This subsection also provides that the program shall be prospective in effect with one exception. It will be possible for the estate of victims of crimes resulting in death to receive compensation even if it preceded the effective date of the act. This *narrow* retroactive clause is limited to payments to $25,000. The Committee *included provision for this narrow range of cases* for two reasons. First, the evidence received by the Committee in connection with the murders, committed by protected witnesses..., established the case for Federal compensation. Second, without some authority for coverage here it is likely that private bills requesting an opportunity to sue the United States Government would face the Congress in the near term. Thus, the Committee concluded that *retroactive*

> *treatment of this narrow range of cases was appropriate.*

H.Rep. No. 767, 98th Cong., 2d Sess., Pt. I, at 28–29 (emphasis added and footnotes omitted).

Construing the Act as a whole, we find that § 3525(d) is an express limited exception to prospective only congressional intent. Where the manner of operation of a provision is expressly qualified, as in § 3525(d), an inference arises that the qualification is exclusive to that provision. N. Singer, Sutherland Stat. Const. § 47.23 (5th ed. 1992) ("*Expressio unius est exclusio alterius*"). Section 3525(d) contains the Act's sole express grant of retroactive power, and the specificity of the grant raises the implication that the Act is otherwise prospective in effect. In the absence of any strong indication of congressional intent which supports retroactive application of the Act, we find this implication persuasive.

Pre-enactment legislative history of the 1984 amendments provides further basis upon which we judge congressional intent and confirms our conclusion that § 3521(a)(3) must be applied prospectively. Particularly instructive is evidence on the evils Congress wished to ameliorate by the 1984 amendments. At the time the new legislation was proposed, Congress was well informed of the serious and recurring incidents of harm to innocent third parties caused by decisions to admit witnesses into the Witness Protection Program. Testimony before congressional sub-Committees regarding the proposed legislation repeatedly focused on the issue of remedying these harms, and this remedial intent is reflected in the Committee Reports. Notably, Congress devoted considerable attention to the program's interference with familial rights, especially the abrogation or diminution of state visitation and custody rights. *See, e.g.,* Hearing before the Subcommittee on Courts, Civil Liberties, and the

---

sional intent coalesce in favor of prospective only application of the immunity provision of the Witness Security Reform Act, 18 U.S.C. § 3521(a)(3), ascertainable congressional intent governs our holding and we do not address the current broader controversy.

**11.** Section 1210 of Pub.L. 98–473 stated:

This subpart [subpart A of part F of chapter XII of Title II of Pub.L. 98–473, enacting Chapter 224 of title 18, United States Code—Protection of Witnesses] and the amendments made by this subpart [repealing provisions formerly set out as a note preceding section 3481 of this title 18] shall take effect on October 1, 1984.

Administration of Justice of the Committee on the Judiciary House of Representatives, 98th Cong., 1st Sess. on H.R. 3086, Witness Protection Act, June 22, 1983, p. 26 [House Hearing].[12]

In response to this fundamental concern, the improvements made to the Witness Protection Program impose duties upon administrators of the program to facilitate the pursuit of claims and rights of third parties against program participants.[13] It is unlikely in the context of explicit intent and concrete action to alleviate harm to third parties that Congress would have intended retroactive sovereign immunity in cases where third party claimants could not benefit from other 1984 codifications or revisions aimed at their protection. Thus, we find that the legislative history harmonizes with other evidence of clear congressional intent to apply § 3521(a)(3) in a prospective manner.

### B.

We hold that Congress clearly expressed its general intent to authorize prospective only application of § 3521(a)(3) and the other 1984 provisions of the Act. Courts are obliged to implement the policy and intent of the legislature, and we believe that our holding furthers the purposes of the entire legislative scheme. A retrospective application of § 3521(a)(3) conflicts with congressional intent.

We express no opinion with regard to issues which may arise upon further prosecution of this case, including the ultimate viability of Prisco's FTCA cause of action, the merits of potential defenses,[14] the implica-

---

**12.** Hon. Robert Kastenmeier, the Chair of the Subcommittee, emphasized the priority of addressing this particularly undesirable effect of decisions made under the Witness Protection Program, indicating that third party rights are one of the things that should be affected in one form or the other in the legislation.

> I would think that when, at the point a decision is made, as a general rule, that a witness be entered into a program which involves his relocation, and possibly an alias, that an inventory obviously be made of all the other persons affected—whether these be creditors or *persons with visitation rights*—and *I would think it would be a situation where those people would be made whole.* They are innocent and obviously they have the benefit of having in many cases court orders stating what their rights are, that the people entering the program would be wholly subject to the rights of others.

House Hearing at 29 (emphasis added).

**13.** For example, 18 U.S.C. § 3524 codifies broad protections to non-relocated parents, obligating the Attorney General to make pre-relocation assurances that compliance with court custody and visitation orders can be achieved, to provide written post-relocation notification of the child's program participation, and to facilitate the exercise of the non-relocated parent's rights in other specified ways. Additionally, § 3524 provides the non-relocated parent a cause of action in the district court against a protected parent who does not accede to the non-relocated parent's rights, with disclosure of the protected parent's new identity and address as the possible remedy.

**14.** Because the parties address the issue of whether the discretionary function exception to waiver of sovereign immunity under the FTCA bars Prisco's claim, we note that our prior decision is relevant in this regard. *Prisco v. United States Dept. of Justice*, 851 F.2d 93 (3d Cir.1988), cert. denied, 490 U.S. 1089, 109 S.Ct. 2428, 104 L.Ed.2d 985 (1989). There we concluded that the government's conduct violated Prisco's clearly established constitutional due process rights. We held that both Prisco's substantive liberty interest and his procedural entitlement to notice and an opportunity to be heard were implicated when Lauren was placed in the Witness Protection Program. 851 F.2d at 97–98 (citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599 (1982) (infringement of parent-child relationship implicates substantive due process); *Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S.Ct. 549, 554–55, 54 L.Ed.2d 511 (1978) (substantive due process); *Ruffalo v. Civiletti*, 702 F.2d 710 (8th Cir.1983), on remand, 565 F.Supp. 34 (W.D.Mo.1983), later proceeding sub nom., *Ruffalo v. United States*, 590 F.Supp. 706 (W.D.Mo.1984) (non-relocated parent is entitled to procedural due process in connection with child's placement in the FWPP); and *Franz v. United States*, 707 F.2d 582 (D.C.Cir.1983), supp. op., 712 F.2d 1428 (D.C.Cir.1983), on remand, 591 F.Supp. 374 (D.D.C.1984) (procedural due process)).

In other cases, we have held that governmental "conduct cannot be discretionary if it violates the Constitution, a statute, or an applicable regulation. Federal officials do not possess discretion to violate constitutional rights or federal statutes." *United States Fidelity & Guaranty Co. v. United States*, 837 F.2d 116, 120 (3d Cir.), cert. denied, 487 U.S. 1235, 108 S.Ct. 2902, 101 L.Ed.2d 935 (1988); see also *Pooler v. United States*, 787 F.2d 868, 871 (3d Cir.), cert. denied, 479 U.S. 849, 107 S.Ct. 175, 93 L.Ed.2d 111 (1986) (federal officials do not possess discretion to violate constitutional rights or federal statutes). Thus, the discretionary function exception to waiver of sovereign immunity does not present a potential defense to Prisco's FTCA claim.

tions of relevant caselaw, and the form or measure of potential relief. We leave the disposition of these issues in the first instance to the district court on remand.

## III.

For the foregoing reasons, we will vacate the order of the district court dated July 27, 1992, affirming its order of June 22, 1992, and remand to the district court for further proceedings.