**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 16, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MICHAEL RIVERA,

    Defendant - Appellant.

No. 24-2013
(D.C. No. 2:22-CR-01561-MIS-1)
(D.N.M.)

_____

**ORDER AND JUDGMENT\***
_____

Before **HOLMES**, Chief Judge, **CARSON**, and **ROSSMAN**, Circuit Judges.
_____

A jury convicted Michael Rivera in the District of New Mexico of sexual-exploitation and child-pornography-production offenses. Mr. Rivera now seeks reversal of his convictions, primarily contending the district court made several erroneous evidentiary rulings. Exercising jurisdiction under 28 U.S.C. § 1291, we discern no error and affirm.

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

**I**

**A**

On January 9, 2022, the Grant County Sheriff's Office (GCSO) received a report of a possible crime against a child involving Mr. Rivera and Jane Doe, a juvenile. The next day, GCSO Detective Jason Jordan interviewed Ms. Doe's mother, Valeri Arzaga. Ms. Arzaga told Detective Jordan that her sister Stephanie Gomez had been in a relationship with Mr. Rivera. In March 2021, Ms. Gomez had secretly recorded what she believed was an inappropriate conversation between Mr. Rivera and Ms. Doe, who was 12 years old at the time. Ms. Gomez gave Detective Jordan the video.[1]

Detective Jordan then arranged a forensic interview with Ms. Doe—also called a "[s]afehouse interview." RIV.267. During this interview, Ms. Doe disclosed no sexual abuse. Still, Detective Jordan asked Ms. Arzaga for consent to search Ms. Doe's cell phone. Ms. Arzaga agreed, and Detective Jordan seized Ms. Doe's phone. Later that evening, Ms. Arzaga alerted GCSO that Ms. Doe had written her "an apology letter" and "was ready to come in and tell the truth about what happened between Michael Rivera and herself." RIV.271. Detective Jordan scheduled a second safehouse

---

[1] As Ms. Doe later testified, the recording shows Mr. Rivera and Ms. Doe discussing being together when she would turn 18 years old and details of a prior sexual encounter between the two.

interview. In this second interview—which was recorded and transcribed—Ms. Doe disclosed sexual abuse by Mr. Rivera. She also said Mr. Rivera asked her to send him nude images of herself, and she confirmed sending them via text message to his cell phone.

Detective Jordan turned the case over to federal agents with Homeland Security Investigations (HSI). HSI forensically examined Ms. Doe's phone. That examination recovered sexually explicit photographs and videos of Ms. Doe. Law enforcement also obtained phone records from Verizon for both Mr. Rivera's and Ms. Doe's phone numbers. Those records revealed the two cell phones exchanged text messages and phone calls in December 2021. Some of the text messages contained images and videos.

In June 2023, the grand jury returned a superseding indictment against Mr. Rivera charging three counts. Each count alleged misconduct by Mr. Rivera against Ms. Doe, who was under 18 at the time of the offenses. Count one alleged that, from around November 18, 2021 to December 13, 2021, Mr. Rivera "knowingly persuaded, induced, [and] enticed . . . [Ms. Doe] to engage in any sexual activity . . . [i]n violation of 18 U.S.C. § 2422(b)." RI.663. Counts two and three alleged, respectively, from around December 4, 2021 to December 5, 2021, and on or about December 13, 2021, Mr. Rivera "persuaded, induced, [and] enticed . . . [Ms.] Doe[] to engage in sexually explicit conduct for the purpose of producing visual depictions of

3

such conduct . . . [i]n violation of 18 U.S.C. §§ 2251(a), 2251(e) and 2256." RI.663–65. Mr. Rivera proceeded to trial.

**B**

**1**

Before trial, the government notified the defense of its intent to introduce evidence that Mr. Rivera "groom[ed] and then sexually abus[ed] [Ms. Doe] in March 2021." RII.61. According to the government, Ms. Doe disclosed this prior sexual abuse during her second forensic interview. The government argued "Rivera's grooming of [Ms. Doe] and his sexually abusing [Ms. Doe] a mere few months prior to the charged offenses is properly admissible as intrinsic evidence as it is inextricably intertwined with the charged conduct." RII.46. The government also claimed the evidence was admissible under both Federal Rule of Evidence 414—which addresses propensity evidence in sexual assault and child molestation cases—and Rule 404(b)—which allows evidence of other bad acts when admitted for a purpose other than propensity, such as motive or identity. *See* Fed. R. Evid. 404(b), 414. The government clarified it "intend[ed] to offer only [Ms. Doe's] testimony [at trial] to prove the prior conduct" and emphasized, since Ms. Doe would "already be testifying . . . , proving the prior sexual abuse w[ould] not be . . . overly time consuming." RII.56.

4

Mr. Rivera moved to exclude the evidence of the uncharged misconduct. He focused his objection under Rule 403, contending evidence of the prior sexual abuse would "confuse the jury and prejudice" him. RII.111. He also argued the evidence was "bolstering at best" because Ms. Doe was the alleged victim of both the charged offenses and the uncharged sexual abuse. RII.115. At a pretrial conference, the district court heard argument and overruled Mr. Rivera's objection. Mr. Rivera now challenges this ruling on appeal, as we will discuss.

Also before trial, the government notified the defense under Federal Rule of Criminal Procedure 16(a)(1)(G) of its intent to introduce expert testimony at trial. As relevant here, the notice disclosed two experts under Federal Rule of Evidence 702: FBI Supervisory Special Agent Daniel O'Donnell (the Unit Chief of the FBI's Behavioral Analysis Unit) and FBI Special Agent Sean Macmanus (an agent with the FBI's Cellular Analysis Survey Team). The notice outlined the background and expertise of each proposed expert and described the topics of their testimony. As to Agent O'Donnell, the government said he would discuss "the definition of grooming," "the stages of the grooming process," and "the impact the grooming process can have on the minor . . . [including] delayed disclosures" of abuse. RI.101. The government disclosed Agent O'Donnell as a blind expert, meaning he was "wall[ed] . . . off from facts of [the] case," had "not

drafted any reports in connection with this case," and had "not met or interviewed any witnesses." RI.101.

The notice stated Agent Macmanus would testify about "[t]he manner in which cellular communications (including phone calls and text messages) are sent through telecommunication networks and logged by the telecommunication provider." RI.102. He also would confirm the "metadata embedded in the images and video Rivera is alleged to have received from the victim via text message is consistent with the historical phone toll records between the victim and defendant." RI.104. Agent Macmanus's testimony, the government explained, would be based on his own "specialized knowledge, skill, experience, and training, as well as facts or data that experts in his field would reasonably rely upon." RI.104.

Mr. Rivera filed a *Daubert* motion to preclude Agent Macmanus and Agent O'Donnell from testifying at trial. *See Daubert* v. *Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). He contended the government "failed to meet its burden" under Federal Rule of Evidence 702 "to prove that [each expert's] testimony is both reliable and relevant." RI.134, 140. The district court held a *Daubert* hearing; both agents testified and were cross-examined by defense counsel. Agent O'Donnell testified about his expertise in grooming behaviors by child sex offenders. Agent Macmanus described his expertise in cell phone records. On cross-examination, Mr. Rivera asked

6

about a video sent from Ms. Doe's phone in an MP4 format but received on Mr. Rivera's phone in a 3GGP format. Defense counsel insisted the change in file type indicated the contents of the videos were different and challenged Agent Macmanus's contrary opinion. At the conclusion of the *Daubert* hearing, the district court ruled both experts were qualified and could offer reliable and relevant trial testimony.

After the *Daubert* hearing—but before trial—Agent Macmanus conferred with a Verizon employee about file conversion on that network.[2] Agent Macmanus then testified at trial that a video sent over the Verizon network in the MP4 format could be converted by the network into the 3GGP format without changing its contents. On appeal, Mr. Rivera challenges the district court's pretrial ruling allowing Agent O'Donnell to testify. He also contests the admission of Agent Macmanus's trial testimony, as we will discuss.

**2**

The jury trial lasted three days.[3] Agent O'Donnell testified about the topics identified in the government's notice and at the *Daubert* hearing. Ms.

---

[2] The parties interchangeably use file *conversion* and file *compression* to describe the process Verizon uses when a transmitted file "is too large of a size to travel through Verizon's network." RIV.655.

[3] The government presented eight witnesses, but we only discuss the testimony of those relevant to the appellate claims. The government's other

Doe testified on direct examination about her relationship with Mr. Rivera. She described the sexual encounter with Mr. Rivera that allegedly occurred in March 2021. She also testified that Mr. Rivera asked her for "nudes" in December 2021, and she admitted sending these through text message from her mobile phone. RIV.434, 437–39, 441.

Before cross-examination, defense counsel asked to impeach Ms. Doe with a video showing her lying to a police officer about her age during a traffic stop. Defense counsel argued the video evidence was admissible under Federal Rule of Evidence 608(a), which allows "testimony about the witness's reputation for having a character for truthfulness or untruthfulness." Fed. R. Evid. 608(a). Mr. Rivera maintained Rule 608(b) permitted him to cross examine Ms. Doe about the incident, even if the video itself was inadmissible. The district court rejected these arguments and ruled that, in any event, Rule 403 counseled against the proposed cross examination because "any relevance [of Ms. Doe lying about her age to a police officer] would be substantially outweighed by the danger of consuming the issues or undue prejudice." RIV.489–90.

---

witnesses were Detective Jordan and HSI Agent Gonzalez, who described the criminal investigation into Mr. Rivera; HSI Task Force Officer Weir, who testified about extracting information from certain mobile devices, including Ms. Doe's phone; and Trevan Humphrey, Mr. Rivera's former employer, who introduced records not at issue in this appeal.

Agent Macmanus testified next and described the phone calls and text messages exchanged between Mr. Rivera and Ms. Doe. He confirmed "Mr. Rivera's phone receiv[ed] . . . images and videos[] overnight on the two dates that were in the Indictment." RIV.634. The prosecution then turned its discussion to file formats. The government asked Agent Macmanus whether "it [is] possible for a file to be converted between MP4 and 3GGP." RIV.635–36. Agent Macmanus agreed it was possible and referenced his conversation after the *Daubert* hearing with a Verizon employee. Mr. Rivera objected based on lack of foundation, vagueness, and prejudice. At the ensuing bench conference, Mr. Rivera argued that, by testifying about information he learned from the Verizon employee, Agent Macmanus demonstrated he "didn't have the knowledge or training" to testify as an expert on file conversion. RIV.641. Mr. Rivera also sought a continuance to subpoena the Verizon employee who had spoken with Agent Macmanus. The district court denied the request and otherwise rejected Mr. Rivera's arguments. Mr. Rivera appeals this ruling.

Three witnesses testified for the defense: Kyeasha Rivera (Mr. Rivera's niece), Amber Rivera (Mr. Rivera's sister), and Ami Becerra (Mr. Rivera's friend). The jury found Mr. Rivera guilty as charged in the indictment. He was sentenced to 420 months on Count 1 and 360 months

9

on Counts 2 and 3, to run concurrently, as well as thirty years supervised release.

This timely appeal followed.

## II

Mr. Rivera appeals his convictions on four grounds. He contends, *first,* the district court erroneously denied his pretrial motion seeking to preclude Agent O'Donnell's blind testimony about grooming. *Second,* the district court erroneously allowed Agent Macmanus to testify at trial about the transmission of multimedia files through the Verizon network. Relatedly, Mr. Rivera contends, for the first time on appeal, Agent Macmanus's testimony about his conversation with a Verizon employee violated the Confrontation Clause of the Sixth Amendment. *Third*, the district court erroneously allowed Ms. Doe to testify about a prior instance of sexual abuse allegedly committed by Mr. Rivera before the acts charged in the indictment. *Fourth*, and finally, Mr. Rivera contends he should have been allowed to impeach Ms. Doe on cross-examination with a video showing her lying to a police officer about her age.

We consider these challenges in turn, discussing additional relevant facts as necessary. Applying the governing legal standards, we conclude there is no basis for reversal.

## A

We first consider Mr. Rivera's contention that the district court, in rejecting his pretrial *Daubert* motion, erroneously allowed Agent O'Donnell to testify at trial in violation of Federal Rule of Evidence 702.

## 1

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (2011).[4] Rule 702 "imposes on a district court a gatekeeper obligation to 'ensure that any and all scientific . . . evidence admitted is not

---

[4] We cite the version of the rule in effect at the time the district court made its decision, which occurred before the amendment on December 1, 2023. *Cf. In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1186 n.4 (10th Cir. 2009) (observing, in the context of the Federal Rules of Civil Procedure, "we cite the rule as it was in force at the time of the district court's decision"). Any changes to the text of the rule have no bearing on our disposition.

only relevant, but reliable.'" *Dodge* v. *Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (quoting *Daubert*, 509 U.S. at 589).

Generally, "[w]e review de novo 'whether the district court employed the proper legal standard and performed its gatekeeper role.'" *United States* v. *Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc) (quoting *United States* v. *Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006)). But Mr. Rivera does not contend the district court wholly failed to perform its gatekeeping role—and for good reason. In resolving the *Daubert* motion, the district court squarely engaged with "the parties' arguments and applied controlling caselaw to the issue." *Hampton* v. *Utah Dep't of Corr.*, 87 F.4th 1183, 1201 (10th Cir. 2023). Nor does Mr. Rivera contend Agent O'Donnell's testimony was not relevant. The only arguments before us concern the reliability of Agent O'Donnell's expert testimony, particularly on the subject of grooming behavior by child sex offenders. Fed. R. Evid. 702(c) (2011) (stating expert testimony under Rule 702 is admissible only if it "is the product of reliable principles and methods").

"In reviewing whether an expert's testimony is reliable, the trial court must 'assess the reasoning and methodology underlying the expert's opinion . . . .'" *Rodriguez-Felix*, 450 F.3d at 1123 (alteration in original) (quoting *Dodge*, 328 F.3d at 1221). We "review the manner in which the court performed its gatekeeping role, deciding whether to admit or exclude

12

testimony, for abuse of discretion." *United States* v. *Gutierrez de Lopez*, 761 F.3d 1123, 1135 (10th Cir. 2014) (quoting *United States* v. *Garcia*, 635 F.3d 472, 476 (10th Cir. 2011)). The trial court has broad discretion "in making the ultimate determination of reliability." *Dodge*, 328 F.3d at 1223.

**2**

Before trial, Mr. Rivera moved to exclude Agent O'Donnell's expert testimony on several grounds. He argued Agent O'Donnell's testimony was "not based on generally accepted scientific concepts." RI.137. Mr. Rivera insisted there was no consensus on "the definition of 'grooming' and what particular behaviors would constitute grooming." RI.140. He contended Agent O'Donnell's opinion would serve as "unreliable bolstering" because— as a blind witness—he was "not applying any proposed principles to the facts of this case" and was "simply testifying as an additional case agent." RI.137. Mr. Rivera argued even if Agent O'Donnell's testimony satisfied Rule 702, it was inadmissible under Rule 403 because it would confuse the jury and unfairly prejudice the defense.

At the *Daubert* hearing, Agent O'Donnell had described his investigative experience, including his work with "large-scale groups" and "online groups that engaged in online sexual exploitation of children." RIV.79. This experience, he explained, allowed him to "engage[] in direct one-on-one communications with child sex offenders." RIV.83. He discussed

13

grooming, which he defined as behaviors "commonly used by certain child offenders to manipulate and exploit children for sexual purposes." RIV.90. He described grooming to occur in five stages. In his experience, the grooming process often leads to delayed disclosures by child victims which, he opined, are "common" due to "shame and embarrassment," "a fear of not being believed," and concern over "getting the offender in trouble." RIV.108–09. On cross-examination, Mr. Rivera questioned whether the five-stages approach used by Agent O'Donnell could reliably differentiate between grooming behavior and otherwise innocent conduct. Agent O'Donnell acknowledged "hypotheticals are very difficult questions to answer," RIV.118, and "individual behaviors may not necessarily be grooming," RIV.117. The district court found, pursuant to Rule 702, Agent O'Donnell was qualified and determined his proposed testimony was reliable and relevant. The court also rejected Mr. Rivera's argument under Rule 403, concluding the probative value of Agent O'Donnell's testimony would not be outweighed by a danger of unfair prejudice.

**3**

On appeal, Mr. Rivera contends Agent O'Donnell's expert testimony was inadmissible under Rule 702 because it was not reliable. While Mr. Rivera does not cite a specific subsection of Rule 702, we situate his argument primarily under Rule 702(c), which permits a witness to offer an

14

expert opinion only if "the testimony is the product of reliable principles and methods." Fed. R. Evid. 702(c) (2011). In support, Mr. Rivera makes several arguments, but none is availing.

*First*, Mr. Rivera claims the reliability of Agent O'Donnell's testimony was "critically undermined" because it was "predicated upon the observation of defendants who are members of larger groups of online sexual predators" instead of individual offenders. Op. Br. at 11. But as the government observes, "nowhere in his *Daubert* motion or at trial did Rivera raise th[is] objection," nor did he "even ask[] any questions related to this topic on cross-examination." Ans. Br. at 19. We agree Mr. Rivera forfeited the argument by failing to raise it in the district court. *See Richison* v. *Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011) (explaining when a "theory simply wasn't raised before the district court, we usually hold it forfeited"). And he waived it on appeal by not arguing for plain error review.[5] *Id.* at 1131 (holding a failure to argue plain error on appeal "marks

---

[5] Even if adequately preserved or reviewed for plain error, this argument would not succeed. On the record before us, there is no reason to conclude that learning about grooming behaviors as "expressed and shared in large online groups" renders Agent O'Donnell's testimony unreliable. Op. Br. at 11. In any event, Agent O'Donnell's training and experience was not limited to the behavior of large, online groups. Rather, as he explained at the *Daubert* hearing, he would "gain[] access to groups or sites . . . in an undercover capacity . . . [to] engage[] in direct *one-on-one communications* with child sex offenders." RIV.83 (emphasis added). To be sure, Agent O'Donnell worked in a unit that focused on large, online groups from 2009 to 2016. But he ultimately joined the

the end of the road for an argument for reversal not first presented to the district court").

*Second*, Mr. Rivera contends Agent O'Donnell's testimony was unreliable because it impermissibly bolstered Ms. Doe's testimony. He argues the government used Agent O'Donnell's testimony to "reconcile [Ms. Doe's] denial of having an inappropriate relationship with Mr. Rivera during [the] first safehouse interview" with her later disclosure of sexual abuse. Op. Br. at 13.[6] We are not persuaded.

Bolstering (or vouching) generally "refer[s] to improper expert testimony expressing a belief or opinion regarding a witness's credibility." *United States* v. *Walker*, 85 F.4th 973, 985 n.9 (10th Cir. 2023). We have consistently recognized "testimony regarding the characteristics of sexually abused children does not, invariably, amount to vouching for the credibility

---

BAU, which focuses on both online sexual exploitation and other types of offending.

[6] The government urges us not to address this argument, insisting it is forfeited because Mr. Rivera only "ma[d]e a passing comment in his *Daubert* motion that Agent O'Donnell's opinions were 'unreliable bolstering.'" Ans. Br. at 23 (quoting RI.137.). However, as the government itself admits, Mr. Rivera also "suggested (in a footnote) . . . that the grooming testimony would vouch for" Ms. Doe. Ans. Br. at 24 (italics omitted); *see* RI.140 n.1 ("The bolstering and prejudice of this education amounts to personal 'vouching' for the complaining witness' testimony . . . ."). While we agree Mr. Rivera could have better developed this argument before the district court, we find it sufficiently preserved for appellate review.

of an alleged victim." *United States* v. *Parson*, 84 F.4th 930, 938 (10th Cir. 2023). The record confirms Agent O'Donnell, at the *Daubert* hearing, testified only in general terms that it was "fairly common" for victims of grooming to delay disclosing abuse for reasons such as "shame and embarrassment," "a fear of not being believed," or concern over "getting the offender in trouble." RIV.108–09. Agent O'Donnell was a blind expert—meaning he did not know about case-specific facts—so we fail to see how he could even express an opinion about Ms. Doe's credibility. *See United States* v. *Riggs*, No. 23-5062, 2024 WL 2873897, at *10 (10th Cir. June 7, 2024) (unpublished) (holding an expert "did not vouch for [the victim's] credibility" because the expert "had not interviewed [the victim] and did not know anything about [the victim's] interviews," and the "testimony was about the disclosure process and child abuse victims in general" (internal quotation marks omitted)).[7]

*Third,* Mr. Rivera argues the five stages of grooming is an inherently "unreliable methodology" because it implicates otherwise innocent behaviors. Op. Br. at 11. The district court rejected this argument, and so do we.

---

[7] We cite unpublished decisions only for their persuasive value, recognizing that they do not constitute binding precedent. *See United States* v. *Ellis*, 23 F.4th 1228, 1238 n.6 (10th Cir. 2022); *see also* 10th Cir. R. 32.1(A).

In its opposition to Mr. Rivera's *Daubert* motion, the government cited social science research illustrating a general consensus within the research community on the "clusters of behaviors utilized by child sex offenders." RI.267; *see* RI.267–69 (listing authorities). Relying on this research, the district court determined "[t]he research community primarily agrees on the clusters of behaviors utilized by child sex offenders to sexually abuse children in the context of grooming." RIV.131. Mr. Rivera did not challenge the government's authorities at the *Daubert* hearing or on appeal. Under the circumstances, we cannot say the district court abused its discretion by endorsing the government's unchallenged position.

In any event, reliability under Rule 702 does not require finding "the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community." *Mitchell* v. *Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999) (quoting *Moore* v. *Ashland Chem. Inc.*, 151 F.3d 269, 276 (10th Cir. 1998)); Fed. R. Evid. 702 (2011) advisory committee's note to 2000 amendment ("The evidentiary requirement of reliability is lower than the merits standard of correctness." (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994))). Rather, the court need only determine the party introducing the testimony has shown "the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability

18

requirements." *Dodge*, 328 F.3d at 1222. These standards were satisfied here, and Mr. Rivera has not shown otherwise.[8]

*Finally*, Mr. Rivera appears to argue Agent O'Donnell's testimony was necessarily unreliable because he was unfamiliar with the specific facts of the case. *See* Op. Br. at 10–11; *see also* RI.140 (Mr. Rivera arguing before the district court that "Special Agent O'Donnell's expected testimony is also unreliable because his opinions are not based on the facts of this case"); Ans. Br. at 17 (understanding Mr. Rivera to be reprising this argument on appeal). We readily reject this argument for the same reason the district court did: it is contrary to applicable law. The district court correctly relied on the advisory committee notes to Rule 702, which state an expert may testify about background "scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts." Fed. R. Evid. 702 (2011) advisory committee's note to 1972 amendment; *see also id.* advisory committee's note to 2000 amendment ("[I]t might also be important in some cases for an expert to educate the factfinder about general principles,

---

[8] Mr. Rivera also insists Agent O'Donnell "critically undermine[d] the reliability of his opinion" when he "admitted" during the *Daubert* hearing "that without access to sufficient information about a case, the individual behaviors identified in the five stages of grooming 'may not necessarily be grooming.'" Op. Br. at 12–13 (quoting RIV.117). The record shows otherwise. Agent O'Donnell repeatedly stated that grooming requires an examination of "the totality of behaviors," RIV.90, and "depend[s] on the circumstance[s]," RIV.116.

19

without ever attempting to apply these principles to the specific facts of the case."). Based on the committee notes, the district court reasonably concluded Agent O'Donnell was "not required to opine on the facts of this case." RIV.131. The district court did not abuse its discretion by allowing Agent O'Donnell to testify in a way the law permits.

Mr. Rivera insists there are certain "dangers" whenever law enforcement officers testify as experts. Op. Br. at 8. In support, he relies on *United States* v. *Rodriguez*, where the district court observed "stray facts and background information are often more damaging in the context of law enforcement testimony than with other expert testimony." Op. Br. at 9 (quoting 125 F. Supp. 3d 1216, 1251 (D.N.M. 2015)).

*Rodriguez* is not particularly helpful. For one thing, a district court decision is not precedential. *Camreta* v. *Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (quoting 18 James Wm. Moore et al., *Moore's Federal Practice* § 134.02[1][d] (3d ed. 2011))). And the general observations in *Rodriguez* do not meaningfully advance Mr. Rivera's

argument that blind testimony by a law enforcement agent is inherently unreliable.[9]

Accordingly, we reject Mr. Rivera's challenges to the district court's pretrial ruling on the admissibility of Agent O'Donnell's testimony.

B

We turn next to Mr. Rivera's challenge to the admissibility of Agent Macmanus's trial testimony on the topic of file conversions.

1

Recall, at the *Daubert* hearing, the district court ruled Agent Macmanus was qualified as an expert in cell phone record analysis. After the *Daubert* hearing but before trial, Agent Macmanus called Verizon and spoke to an employee who confirmed file conversion was possible on their network. On the second day of trial, the government asked Agent Macmanus whether Verizon could change the file format of a video sent across its network from MP4 to 3GGP. Mr. Rivera objected based on lack of foundation. The court advised the government to "explain why [the Agent] would know the answer to a question like that." RIV.636. The government

---

[9] To the extent Mr. Rivera also argues the definition of grooming used by Agent O'Donnell is necessarily unreliable because it was developed by the FBI and BAU, we agree with the government that "[n]othing in [Mr.] Rivera's opening brief reasonably challenges [the district court's] conclusion" that "the concept of grooming used by Agent O'Donnell comported to the prevailing view in the field and was thus reliable." Ans. Br. at 22.

first asked Agent Macmanus if he was "familiar with MP4" and "3GGP file format[s]," and he answered, "Yes." RIV.636. The government asked if he had "spoken to industry professionals about these different file formats," and Agent Macmanus responded, "Related to Verizon records, yes." RIV.636. As the government began to ask a follow-up question, Mr. Rivera objected.

The district court held a bench conference. Mr. Rivera argued Agent Macmanus did not have the requisite knowledge to testify about file conversion on the Verizon network. *See* Fed. R. Evid. 702 (2011) (requiring an expert witness be "qualified as an expert by knowledge, skill, experience, training, or education"). According to Mr. Rivera, that Agent Macmamus "called the engineers at Verizon" showed he lacked expertise and was just someone "who comes into court and passes on information." RIV.640. The prosecution responded Agent Macmanus was "well within his rights to consult with other people and to gather information." RIV.641.

The district court asked the government to confirm the *source* of Agent Macmanus's knowledge on file conversion, asking, "[D]oes he have any other knowledge, besides that phone call that he had, that sometimes files are sent in one format and then are somehow delivered in a separate format for size considerations . . . ?" RIV.656. The prosecutor conferred off the record with Agent Macmanus and confirmed he had the relevant training "in

addition to the knowledge he gained from Verizon employees directly." RIV.657. The government referred to Agent Macmanus's "certification in cyber security" which included "training on file formats and file compression"; "training directly from Verizon"; and "training from other companies . . . [like] Facebook . . .that use file compression in a similar way." RIV.657.

Mr. Rivera continued to object to Agent Macmanus's testimony. He sought a continuance to subpoena the Verizon employee and asked for the employee's "name and phone number." RIV.663. The court asked defense counsel, "Do you have some right to the name and phone number of the person at Verizon?" RIV.663. Defense counsel responded he had a right to know "the basis of [Agent Macmanus's] opinion and the reason for it." RIV.663.

The district court overruled Mr. Rivera's objections. The government's notice made clear Agent Macmanus would testify about file compression, the district court reasoned, and the court was satisfied Agent Macmanus in fact had "expertise in this area, including file formats and compression." RIV.664. The court acknowledged Agent Macmanus acquired information between the *Daubert* hearing and trial from a Verizon employee, but Mr. Rivera could "cross-examine him on all of that" including the quality of "his

training . . . from Verizon" and "exactly what question he asked Verizon." RIV.664.

**3**

On appeal, Mr. Rivera contends Agent Macmanus lacked the knowledge required under Rule 702 to testify about file conversion on the Verizon network. Mr. Rivera specifically objects to Agent Macmanus's reliance on information he obtained from a Verizon supervisor after the *Daubert* hearing. Mr. Rivera separately asserts for the first time on appeal that his inability to cross-examine the unknown Verizon employee violated the Confrontation Clause of the Sixth Amendment. His evidentiary argument is unavailing, and his constitutional claim is waived.

**a**

We review Mr. Rivera's evidentiary challenge for abuse of discretion. *Rodriguez-Felix*, 450 F.3d at 1122 (citing *Dodge*, 328 F.3d at 1223). Again, we discern no error.

*First*, the record does not support Mr. Rivera's contention that Agent Macmanus lacked "specialized knowledge" to testify about file conversion. Op. Br. at 16. Recall, the district court must "assess the reasoning and methodology underlying the expert's opinion" to ensure it is reliable. *Dodge*, 328 F.3d at 1221. That is precisely what the district court did here. The government confirmed Agent Macmanus had prior knowledge of file

24

compression based on training from telecommunications providers and through cybersecurity certifications. The government's Rule 16 notice disclosed Agent Macmanus had received the relevant training. RI.102–103 (Verizon); RI.109 (SysAdmin, Audit, Network, and Security Institute); RI.121 (Facebook). Based on this, the district court determined Agent Macmanus's conversation with the Verizon employee after the *Daubert* hearing was not to acquire any new expertise on file compression but only "to confirm that Verizon does . . . turn[] MP4s into 3GGPs." RIV.658. Under these circumstances, the district court did not abuse its discretion in concluding Agent Macmanus's testimony was "based on sufficient facts or data" as required by Rule 702. Fed. R. Evid. 702(c) (2011).

*Second*, Federal Rule of Evidence 703 expressly permits precisely what Mr. Rivera contests: Agent Macmanus's conversation with the Verizon employee. Rule 703 states "[a]n expert may base an opinion on facts or data in the case *that the expert has been made aware of* or personally observed." (emphasis added); *see also Wilson ex rel. Wilson* v. *Merrell Dow Pharms. Inc.*, 893 F.2d 1149, 1153 (10th Cir. 1990) ("[Rule] 703 allows an expert witness to base his testimony upon facts or data that are hearsay, provided that those facts or data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'" (quoting Fed. R. Evid. 703 (1972))); *TK-7 Corp.* v. *Est. of Barbouti*, 993 F.2d

25

722, 732 (10th Cir. 1993) (similar). Mr. Rivera does not mention Rule 703, but it squarely applies here.[10]

Rule 703 illustrates that, "[u]nlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592 (citing Fed. R. Evid. 701, 702, 703); *see also Kinser* v. *Gehl Co.*, 184 F.3d 1259, 1270 (10th Cir. 1999) (same), *abrogated on other grounds by Weisgram* v. *Marley Co.*, 528 U.S. 440 (2000). "[T]his relaxation of the usual requirement of firsthand knowledge [by a witness] . . . is premised on an *assumption* that the expert's opinion will have a *reliable basis in the knowledge and experience* of his discipline." *Daubert*, 509 U.S. at 592 (emphasis added). "*Daubert* generally does not . . . regulate the underlying facts or data that an expert relies on when forming her opinion." *United States* v. *Lauder*, 409 F.3d 1254, 1264 (10th Cir. 2005). As the government appropriately highlights, Mr. Rivera "makes no attempt to establish that experts in the field of telecommunications would not rely on information provided directly by telecommunications providers." Ans. Br. at 33. Therefore, on this record we cannot say "the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances" in admitting Agent

---

[10] The district court likewise did not reference Rule 703, but the facts support its application here.

Macmanus's testimony about file conversion on the Verizon network. *Rodriguez-Felix*, 450 F.3d at 1122 (quoting *Dodge*, 328 F.3d at 1223).

**b**

Mr. Rivera also contends—for the first time on appeal—that the district court's refusal to allow him to cross-examine the Verizon employee violated the Confrontation Clause. Op. Br. at 21. Generally, "[w]e review a claim of error involving the Confrontation Clause de novo." *Gutierrez de Lopez*, 761 F.3d at 1132. But "[w]here a Confrontation Clause objection is not *explicitly* made below we will not address the constitutional issue in the absence of a conclusion that it was plain error for the district court to fail to raise the constitutional issue *sua sponte*." *United States* v. *Ibarra-Diaz*, 805 F.3d 908, 919 (10th Cir. 2015) (quoting *United States* v. *Perez*, 989 F.2d 1574, 1582 (10th Cir. 1993) (en banc)); *see United States* v. *Otuonye*, 995 F.3d 1191, 1205 (10th Cir. 2021) (rejecting a Confrontation Clause argument on appeal because the defendant "did not specify [at the district court] whether his objection was rooted in the Confrontation Clause or [the] Federal Rule[s] of Evidence").

The government observes "not once did [Mr. Rivera] mention the Confrontation Clause" at the district court and he failed on appeal to "argue under the plain-error standard." Ans. Br. at 35. We agree. Still, Mr. Rivera argues he sufficiently preserved the Confrontation Clause objection by

27

requesting a continuance to subpoena the Verizon supervisor. In support, Mr. Rivera relies on *United States* v. *Robinson*, 583 F.3d 1265 (10th Cir. 2009), but that case does not help him.

In *Robinson*, we noted the plaintiff preserved his Sixth Amendment Confrontation Challenge by raising a constitutional challenge under the Fifth Amendment's Due Process Clause. 583 F.3d at 1269 n.1. And "[p]erhaps most importantly," we observed in *Robinson* "the district court acknowledged that [the plaintiff] had advanced a due process challenge." *Id.* Here, by contrast, the record confirms Mr. Rivera's challenge was at all times an evidentiary objection, not a constitutional one. And that is just how the district court understood and resolved it. *See United States* v. *Pena*, 216 F.3d 1204, 1209 (10th Cir. 2000) (holding the defendant did not waive an issue because the "record reflect[ed] that . . . the district court understood [the] argument" as it was presented on appeal).

Because Mr. Rivera did not make an explicit constitutional objection in the trial court or argue for plain error, he cannot raise a Confrontation Clause challenge for the first time on appeal.

**C**

Mr. Rivera next asserts the district court abused its discretion in admitting Ms. Doe's testimony describing Mr. Rivera's prior uncharged sexual misconduct. He says the district court "erred in its application of

28

[Rule] 414" and "how it applied Rule 404 and conducted 403 balancing." Op. Br. at 22. We first observe Mr. Rivera's precise arguments for reversal on this ground are difficult to decipher. The government suggests they "boil down to one complaint: that the court erred in performing its Rule 403 balancing test." Ans. Br. at 41. We agree with that framing, which Mr. Rivera does not dispute.[11] We thus consider whether, in admitting the prior act evidence under Rule 414, the district court abused its discretion in balancing the appropriate interests under Rule 403.

**1**

"Evidence law generally abhors the propensity inference—the notion that a person did something just because he has a corresponding character or has done similar things before." *United States* v. *Piette*, 45 F.4th 1142, 1157 (10th Cir. 2022). Rule 404(b)(1) expressly prohibits the introduction of evidence of a person's other acts "to prove [that] person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). "But Federal Rule of Evidence 414 is an exception to that general rule—embracing the propensity inference in

---

[11] We see no adequately developed argument from Mr. Rivera challenging the district court's rulings based on intrinsic evidence, relevance under Rule 414, or admissibility under Rule 404(b). And notably, in his reply brief, Mr. Rivera does not contest the government's characterization of his argument as focused on the relevant Rule 403 analysis or offer any response at all on the merits of this issue.

cases involving child molestation." *United States* v. *Harjo*, 122 F.4th 1240, 1248 (10th Cir. 2024). Rule 414 provides, "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation." Fed. R. Evid. 414(a).

The admissibility analysis under Rule 414 proceeds in two steps. "A district court must determine first whether the proffered evidence is relevant under Rule 414, and second, whether its probative value is *substantially* outweighed by its risk of *unfair* prejudice under Rule 403." *Harjo,* 122 F.4th at 1249. On appeal, Mr. Rivera does not dispute the challenged evidence is relevant, so our focus is on the second step.

"Rule 403 balancing in the [Rule 414] context requires the court to consider" the probative value of the evidence by weighing: "1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence." *United States* v. *Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998) (quoting Mark A. Sheft, *Federal Rule of Evidence 413: A Dangerous New Frontier*, 33 Am. Crim. L. Rev. 57, 59 n.16 (1995)). The court must balance the probative weight of the evidence against three factors that measure prejudice: "1) how likely is it such evidence will contribute to an improperly-

based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct." *Id.* (quoting Sheft, *supra*, at 59 n.16). Consistent with other evidentiary determinations, "[w]e review the admission of Rule 414 evidence for an abuse of discretion." *United States* v. *Mann*, 193 F.3d 1172, 1173 (10th Cir. 1999).

**2**

As discussed, the government gave notice of its intent to offer Ms. Doe's testimony about an instance of sexual misconduct by Mr. Rivera that predated the offense conduct. The government argued the evidence was admissible as intrinsic evidence and under Rules 414 and 404(b). Mr. Rivera moved to exclude the evidence, primarily objecting under Rule 403 that the "prejudice [of the testimony] substantially outweighs any possible probative value." RII.113.

At a pre-trial hearing, the district court held the evidence was admissible for the reasons offered by the government. The court first held Ms. Doe's "testimony alone is sufficient for a jury to find by a preponderance that the other act occurred." RIV.1009. In considering Rule 403, the district court marshaled the *Enjady* factors, stating:

> As to *Enjady* . . . the Court[ i]s considering how likely it is that such evidence will contribute to an improperly based jury verdict. The Court finds that is unlikely. The Court finds that this evidence

31

is obviously properly considered by the jury as intrinsic evidence and evidence as to identity. I mean, the Court would likely agree to a limiting instruction, if the defense wants to propose one, as to this evidence. To Factor Number 2, the extent to which such evidence will distract the jury from central issues of the child, the Court finds it will not distract the jury from the central issues of the trial. It is relevant evidence to the central issues of the trial, who was requesting these videos, where the videos were sent. The Court finds it's also relevant as to the ID of the defendant. And, again, the Court would offer a limiting instruction to prevent any potential distraction from the actual charges in this case. And the Court finds that proof of the conduct will not be time consuming.

RIV.1009–10. The court then turned to Rule 403:

As to the 403 analysis, the Court finds the probative value of the prior sexual molestation and grooming is not substantially outweighed by the danger of unfair prejudice. The prior sexual molestation and grooming is highly probative, because it explains the defendant's relationship with the child and gives context as to why, again, he would ask her for these photographs, and why the child might take these photographs and send them to the defendant. It's highly probative as to identity. The Court finds the probative value is not substantially outweighed, or that the probative value is not in danger of being substantially outweighed by the unfair prejudice. Again, the Court would offer a limiting instruction to eliminate any prejudice.

RIV.1010. The court clarified it was "highly disputed" whether Mr. Rivera had an inappropriate relationship with Ms. Doe and had actually received the images and videos, "which heighten[ed] the need for [Ms. Doe's] testimony." RIV.1013; *see Enjady*, 134 F.3d 1427, 1433 ("Rule 403 balancing in the [Rule 414] context requires the court to consider . . . how seriously disputed the material fact is" (quoting Sheft, *supra*, at 59 n.16.)). The court overruled Mr. Rivera's objection, concluding Ms. Doe's testimony about the

32

prior uncharged conduct was more probative than prejudicial. Ultimately, the court instructed the jury using the limiting instruction proposed by Mr. Rivera, which "cautioned [the jury] that Michael Rivera is not on trial here for any acts or crimes not alleged in the Indictment" and that he "may not be convicted of the crimes charged in the Indictment" based solely on the prior uncharged acts. RI.745. The court read the instruction both before and after Ms. Doe's testimony and included it in the final jury instructions.[12]

---

[12] The limiting instruction stated, in full:

> You are instructed that the evidence of conduct by Michael Rivera on previous occasions involving other sexual molestations has been offered by the Government for its bearing on any matter to which it is relevant, including Michael Rivera's disposition or propensity to commit the offense that is charged in the Indictment and the improbability that Michael Rivera has been falsely or mistakenly accused of these crimes.
>
> It is entirely up to the jury to determine what weight, if any, such "other conduct" evidence deserves. In reaching your conclusion, you may consider all of the surrounding facts and circumstances of such testimony and give it such weight as you think it is entitled to receive in light of your experience and knowledge of human affairs.
>
> However, you are cautioned that Michael Rivera is not on trial here for any acts or crimes not alleged in the Indictment. Michael Rivera may not be convicted of the crimes charged in the Indictment if you are to find only that he committed other crimes at such other times. You are reminded that, at all times, the United States bears the burden of proving beyond a reasonable doubt that Michael Rivera committed the offenses charged in the indictment.

RI.745 (Instruction No. 12).

**3**

Mr. Rivera claims the district court "overstated the probative value of the evidence" and "gave short shrift to" certain *Enjady* factors weighing against admissibility. Op. Br. at 29. Neither the record nor applicable law supports his position, however.

*First*, he contends the district court failed to adequately consider that Ms. "Doe's allegations were never reported, nor corroborated by the government." Op. Br. at 29. We disagree. The corroboration Mr. Rivera insists on is not required by Rule 414 or *Enjady*; Mr. Rivera does not argue otherwise. Nor does the preponderance standard demand "the prior acts . . . be *clearly* proved." *Harjo*, 122 F.4th at 1252 n.14. Rather, the standard is satisfied if "it was more likely than not that the[ prior acts] took place." *Id.* Here, in admitting the testimony, the district court concluded, "because it's anticipated [Ms. Doe] will testify that th[e] sexual assault happened[,] . . . [the] alleged victim's testimony alone is sufficient for a jury to find by a preponderance that the other act occurred." RIV.1009. The district court's reliance on Ms. Doe's trial testimony was not an abuse of discretion.

*Second*, Mr. Rivera claims the court did not properly account for the fact the charged conduct and the prior uncharged misconduct relied on testimony from the "same complainant"—Ms. Doe. Op. Br. at 28. This circumstance, he argues, impermissibly "bolster[s] Jane Doe's credibility

34

regarding the indictment allegation." Op. Br. at 28. We cannot agree with Mr. Rivera.

Mr. Rivera cites no authority suggesting the charged conduct and Rule 414 evidence must have independent sources. And we have suggested otherwise. In *United States* v. *Castillo*, we held evidence of the uncharged acts, which involved the same victims as the charged acts, was admissible because it showed "a broader pattern of molestation[, which] may be important to put the charge in perspective." 188 F.3d 519, at *3 (10th Cir. 1999) (unpublished table decision) (quoting 137 Cong. Rec. S3242 (daily ed. Mar. 13, 1991)). Here, the district court similarly reasoned "[t]he prior sexual molestation and grooming is highly probative, because it explains the defendant's relationship with the child and gives context as to why . . . he would ask her for these photographs, and why the child might take these photographs and send them to" Mr. Rivera. RIV.1010.

*Third,* Mr. Rivera contends the prior uncharged sexual misconduct and the charged conduct (including pornography-production offenses) were dissimilar, so the district court should have assigned more weight to the danger of unfair prejudice. Op. Br. at 30. Mr. Rivera is correct the charged conduct involved no physical abuse while the uncharged conduct did. But that distinction is not critical here. We have acknowledged in the Rule 414 context that "evidence of child molestation is inherently probative of the

35

propensity to commit other acts of child molestation or abuse, *including child pornography offenses.*" *United States* v. *Mercer*, 653 F. App'x 622, 628 (10th Cir. 2016) (unpublished) (emphasis added); *see also United States* v. *Sanchez*, 440 F. App'x 436, 439 (6th Cir. 2011) (unpublished) (hands-on abuse and child-pornography-production charges "are sufficiently similar for the prior act to have probative value"). Mr. Rivera offers no meaningful contrary argument. Nor does Mr. Rivera mention that the jury received a limiting instruction about the prior act evidence, which further mitigates any risk of prejudice. *Zafiro* v. *United States*, 506 U.S. 534, 539 (1993) (explaining "limiting instructions[] often will suffice to cure any risk of prejudice" even "[w]hen the risk of prejudice is high").

*Finally*, Mr. Rivera appears to argue the probative value of the uncharged conduct evidence was weak because this case does not present the "swearing match" contemplated by Congress in allowing evidence of prior sexual conduct under Rule 414. Op. Br. at 30. He argues the purpose of Rule 414 "was to reduce the extent to which *rape trials* became 'swearing match[es]' about consent." Op. Br. at 30 (alteration in original) (emphasis added) (quoting *Enjady*, 134 F.3d at 1431). Rule 414, he contends, is mostly concerned with "contact offense[s]" like rape, not offenses that pertain to "physical images." Op. Br. at 30. We disagree.

36

Rule 414 is not cabined to "contact offense[s]," as Mr. Rivera suggests. Op. Br. at 30. Rule 414 permits prior act evidence when the "defendant is accused of child molestation," including "any conduct prohibited by 18 U.S.C. chapter 110." Fed. R. Evid. 414(a), 414(d)(2)(B). Chapter 110 contains non-contact offenses relating to the distribution of child pornography. *See* 18 U.S.C. § 2252A. And the district court specifically found "the relationship [between Mr. Rivera and Ms. Doe] is highly disputed in this case." RIV.1012. The district court did not abuse its discretion in concluding that factual disputes "regarding the relationship between the two parties" "heighten[ed] the need for testimony." RIV.1013.

Accordingly, the district court acted well within its discretion when it determined under Rule 403 and *Enjady*'s balancing inquiry that the probative value of Ms. Doe's testimony about the prior sexual misconduct was not substantially outweighed by a danger of unfair prejudice.

**D**

Mr. Rivera's final argument for reversal is the district court should have allowed him to impeach Ms. Doe with evidence she lied to a police officer about her age. As with the other evidentiary issues, we review "legal interpretations of the Federal Rules of Evidence *de novo*," and the district court's evidentiary rulings for an abuse of discretion. *United States* v. *Griffin*, 389 F.3d 1100, 1103 (10th Cir. 2004). Again, we discern no error.

37

1

Federal Rule of Evidence 608(b) provides, "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). "But the court *may*, on cross-examination, allow them to be *inquired* into if they are probative of the character for truthfulness or untruthfulness of: (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about." *Id.* (emphasis added). Under these circumstances, "'[a]n attorney cross-examining' the witness under Rule 608(b) can 'only ask about the alleged dishonest act' and then is "'stuck with" his answer, even a denial.'" *United States* v. *A.S.*, 939 F.3d 1063, 1072 (10th Cir. 2019) (alteration in original) (quoting *Seifert* v. *Unified Gov't*, 779 F.3d 1141, 1154 (10th Cir. 2015)). Of course, "the overriding protection of Rule 403" still applies. Fed. R. Evid. 608 advisory committee's note to 1972 amendment.

2

Recall, Mr. Rivera sought to impeach Ms. Doe at trial with a video of her making a false statement to a police officer about her age. The district court excluded the video under Rule 608(b). Mr. Rivera insisted Rule 608(b) allowed him to at least question Ms. Doe on cross-examination about the

untruthful statement. The district court exercised its discretion under Rule 403 and disallowed cross-examination on the subject.

**3**

On appeal, it is unclear if Mr. Rivera contends the district court erred in excluding the video of the traffic stop, or if he contends the court erroneously prohibited cross examination about the encounter. Op. Br. at 31 (stating the court "prevent[ed] Mr. Rivera from fully confronting Jane Doe [w]hen his counsel would attempt impeachment"); Op. Br. at 31 ("Rivera made an attempt to impeach Jane Doe with a video where she lied to a police officer on a clear video found on her own phone about her age when driving the car."); Op. Br. at 32 ("Once again, the excluded evidence was a video of . . . 'specific conduct where [Ms. Doe] did lie to the police officers about her age.'" (quoting RIV.485)). However construed, the argument fails.

*First*, the district court correctly excluded the video under Rule 608(b). The video involved specific conduct—unrelated to the instant criminal case—that Mr. Rivera wanted to use to attack Ms. Doe's character for truthfulness. Rule 608(b) says extrinsic evidence is not admissible for such a purpose. Fed. R. Evid. 608(b) ("Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of

39

a witness's conduct in order to attack or support the witness's character for truthfulness.").

*Second*, the district court likewise did not err in refusing to allow cross-examination about the incident. "[U]nder Federal Rule of Evidence 608(b), it is within the discretion of the district court to decide whether a defendant may be cross-examined about prior conduct concerning her character for truthfulness, subject always to the balancing test of Federal Rule of Evidence 403." *United States* v. *Schuler*, 458 F.3d 1148, 1155 (10th Cir. 2006). Mr. Rivera contends the district court engaged in a "perfunctory 403 analysis." Op. Br. at 31. We disagree. The court first ruled,

> I don't find it relevant in this case. Misrepresenting to an officer that she had a license doesn't seem relevant to me. I mean, I think any relevance it had would be substantially outweighed by the danger of confusing the issues or undue prejudice, because I think the jury might interpret it as the defendant just arguing that the witness is a liar and that she lied on this occasion.

RIV.489–90. The court later reiterated that it "would exercise [its] discretion to not allow that testimony because [it doesn't] find it . . . relevant. But if there was a slight relevance, [the court] would find it's outweighed by the danger of undue prejudice and confusion of the issues under 403." RIV.491.

Mr. Rivera insists the district court's decision to disallow the impeachment "was essentially a directed verdict" because "it prevented all

40

counter evidence[,] leaving the jury with no doubt as to whose credibility was unimpeachable." Op. Br. at 32. Mr. Rivera overstates the probative value of the evidence. As the government persuasively observes, "[t]his sort of garden-variety juvenile falsehood . . . does not remotely suggest that [Ms. Doe] would invent a serious allegation against someone else, one that delivered her much personal embarrassment and scrutiny and no obvious benefit." Ans. Br. at 54. Mr. Rivera has not shown the district court's holding "was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifest[ed] a clear error of judgment." *A.S.*, 939 F.3d at 1070 (quoting *United States* v. *Batton*, 602 F.3d 1191, 1196 (10th Cir. 2010)).

### III

Mr. Rivera's conviction is **AFFIRMED**.

Entered for the Court

Veronica S. Rossman
Circuit Judge